No. 3052

Second Circuit

———

THE  AMERICAN  NATIONAL  BANK  v.
OWENS
PEGUES  AND  PEGUES, Garnishees
ALEXANDRIA  CONTRACTING  CO., Third
Opponent

———

(March 14, 1928.   Opinion and Decree.)
(May 22, 1928.   Rehearing Refused.)

———

*(Syllabus by the Editor)*

1.  **Louisiana  Digest—Alienation—Par. 16;
Attachment—Par. 27, 35.**

An  agreement  whereby  a  third  person should  be  paid  all  sums  of  money  that might  be  collected  by  the  attorneys of  the  first  party  from  a  railway  company  does  not  vest  title  to  the  proceeds in  the  third  party  but  is  merely  an order  to  the  attorneys  to  dispose  of the  proceeds  when  collected.   Therefore,  an  attachment  by  creditor  of first  party  of  these  proceeds  is  good.

Appeal  from  the  Eleventh  Judicial  District  Court,  Parish  of  DeSoto.  Hon. Hal A. Burgess,  Judge.

Action by The American National Bank against S. H. Owens.  Pegues and Pegues, garnishees.  Alexandria Contracting Company, third opponent.

There was judgment for plaintiff and third opponent appealed.

Judgment affirmed.

Craig, Bolin and Magee, of Mansfield, attorneys for plaintiff, appellee.

Parson and Colvin, of Mansfield, attorneys for third opponent, appellant.

ODOM, J.    The plaintiff bank brought suit against S. H. Owens to recover certain amounts alleged to be due on promissory notes.

Alleging that the defendant, Owens, was then a non-resident of the state and that Pegues & Pegues, attorneys, domiciled in DeSoto parish, were indebted unto the defendant or had money in their possession belonging to him, plaintiff procured the issuance of a writ of attachment and had seized in the hands of said Pegues & Pegues whatever property or funds they had in their hands or under their control belonging to the defendant.

In answer to interrogatories propounded to them as garnishees Pegues & Pegues answered that at the time the service of the interrogatories was made on them they had $200.00

"* * * which we originally collected for the defendant in this suit (evidently referring to another suit) but prior to the time that we collected this money, the defendant instructed us to pay the amount that we collected out of the claim that we had for him against the Texas & Pacific Railway Company, over to the Alexandria Construction Company of Alexandria, La., as we understood that they had a chattel mortgage on the mules that the claim grew out of. About the time that we collected this money as aforesaid, the defendant instructed us to hold same until the Alexandria Construction Company convinced us that he was indebted unto them to the extent of $200.00. We have been waiting for the Alexandria Construction Company and the defendant to adjust their differences before paying the money over to the Alexandria Construction Company."

These answers were filed by the garnishees on February 14, 1927.

On April 13, 1927, the Alexandria Construction Company intervened in said suit by way of third opponent, alleging that said sum of money now in the hands of the garnishees

"* * * was received by the said Pegues & Pegues from the Texas & Pacific Railway Company as payment and settlement by said Railway Company of its liability to S. H. Owens growing out of the death of certain livestock owned by said S. H. Owens in an accident on the right of way of said railroad in the parish of Red River, Louisiana.

"That at the time of the killing of said livestock the said S. H. Owens was indebted unto your appearer, and as security therefor your appearer held a chattel mortgage against said livestock in the sum of one thousand ($1000.00) dollars."

It is further alleged that said Owens employed the law firm of Pegues & Pegues to represent him in the collection of said claim against said Railway Company for killing said livestock

"* * * and that during the pendency of said claim, and prior to the service of the writ of garnishment herein, a verbal contract was entered into between the said S. H. Owens and your appearer, represented by C. E. Ransbottom, its president, by the terms of which the said Owens assigned and set over unto your petitioner as part payment of, and to be credited on the amount due by the said Owens to your petitioner, all of the sums of money that might be collected by the said Pegues & Pegues from the said Texas & Pacific Railway Company; and that at said time notice of the assignment and transfer of said sums was given to and accepted by said Pegues & Pegues, and said Pegues & Pegues then and there consented to be bound by said contract.

"Your petitioner shows that subsequent to the time of said transfer your petitioner requested the said Pegues & Pegues to pay over to it the proceeds held by said firm of the claim collected by it from the Texas & Pacific Railway Company under the claim above referred to, but that the said Pegues & Pegues refused to do so, for the reason that the said S. H. Ownes had previously notified the said firm to withhold

payment of the same to your appearer, as set up in the answers to the interrogatories by said Pegues & Pegues."

Intervenor prays for judgment against the defendant Owens

"* * * that under and by virtue of the transfer and assignment to your appearer, as above set forth, your appearer is entitled to be paid the amount in the hands of said Pegues & Pegues in preference to the plaintiff herein."

The plaintiff filed an exception of no cause of action to intervenor's petition, which was sustained, and intervenor prosecutes this appeal.

## OPINION

This case comes up on the pleadings alone, and the only question presented is this:

Do the allegations of intervenor's petiiton show that it had clear title to the money seized in the hands of Pegues & Pegues, attorneys?

If the money in the hands of the attorneys was the property of Owens, it was subject to attachment by his creditors.

The plaintiff bank attached it as his property. Its attachment conferred upon it a privilege on the property and its claim must prevail, unless intervenor can show that the money, when attached, belonged to it and not to Owens, the defendant.

It therefore follows that unless the allegations of intervenor's petition, which are taken for true, show that said money belonged to it, and not to Owens, no cause of action is shown.

Intervenor's petition shows that its debtor, Owens, had a claim against the Texas & Pacific Railway Company for stock killed and that he placed this claim in the hands of Pegues & Pegues, attorneys, for collection. Intervenor does not allege that the claim was transferred or assigned to it but, on the contrary, alleges that during the "pendency of the claim," that is, while it was in the hands of the attorneys for collectoin, a verbal contract was entered into between it and said Owens

"* * * by the terms of which said Owens assigned and set over to your petitioner as part payment of, and to be credited on the amount due by the said Owens to your petitioner, *all of the sums of money that might be collected by said Pegues & Pegues from the said Texas & Pacific Railway Company.*"  (Italics, ours.)

It is clear from intervenor's allegations that what Owens owned at the time of the alleged transfer, was the claim against the Railway Company.    That was property which could have been validly transferred by Owens to intervenor and its title thereto would have been complete if and when due notice of the transfer was given to the Railway Company.

If the claim itself had been transferred to intervenor, it would have owned the proceeds when collected.  Not having acquired title to the claim against the Railway Company, intervenor acquired no title to the proceeds.

When Owens placed the claim in the hands of Pegues & Pegues, attorneys, for collection, they became the agents of Owens for the collection thereof, and the acts of the attorneys were the acts of Owens.    The attorneys were never the agents of intervenor, but acted all through for Owens.  When they collected the claim, they collected for Owens, and the proceeds went into their hands as the property of Owens.

Now, the question is, did the agreement between Owens and the intervenor to the effect that the attorneys should pay to intervenor

"* * * all such sums of money that might be collected by the said Pegues & Pegues from the said Texas & Pacific Railway Company"

divest Owens' title to said proceeds when collected and vest title thereto in the intervenor?

We do not think so. The alleged transfer was not such in fact. The most that can be said of it is, that it was an order to the attorneys directing them how to dispose of the proceeds when collected. The attorneys agreed to make such disposition of the proceeds when collected as was directed by Owens, that is, to pay the same to intervenor. But that agreement on their part did not affect Owens' title to the money collected. The money in the hands of the attorneys belonged to their client, Owens, and was subject to seizure by his creditors.

In the case of Wilson & Co. vs. Lizardi, 15 La. 255, it was held, to quote the syllabus:

"Where the plaintiff debtor placed drafts in the hands of an agent for collection, with orders to collect and remit the proceeds to the plaintiff, and in the meantime another creditor attached these funds in the hands of the agent: Held, that the attachment is good, and that the funds are liable to be attached by other creditors, until placed beyond their reach by remittance."

In the case of Chaffe & Sons vs. Heyner, 31 Ann. 594, (see page 621) Justice Marr said:

"In Wilson vs. Lizardi, 15 La. 255, a debtor placed drafts for collection in the hands of his factors in New Orleans, with instructions to remit the proceeds to his creditors in London. Plainly neither the title nor the possession, nor the right of possession, passed to the London creditors; and the drafts and the proceeds in the hands of the factors, the agents of the debtor, were subject to attachment at the suit of his other creditors."

In the case of Robertson, Hudson & Pulliam vs. Scales & Gibson, et als., 15 La. Ann. 545, Scales & Gibson placed in the hands of their attorneys, Scales & Wallace, certain notes for collection and directed said attorneys to remit a certain amount of the proceeds when collected to Seaman, Peck & Co., a creditor. Before the notes were collected by the attorneys they were attached by garnishment in the hands of the attorneys by other creditors of Scales & Gibson. The court said:

"The question of law presented in the case is, whether the order given by Scales & Gibson to their attorneys, to remit, out of the first moneys collected, after paying the balance due Hardie & Co., an amount sufficient to pay the promissory notes due plaintiffs, and the acceptance of this order by the attorneys, vested a right of property in the plaintiffs to the notes and accounts, or their proceeds, to an amount sufficient to pay the debt due them from the firm of Scales & Gibson."

The court then pointed out the distinction between the case of an order to pay the proceeds of goods, merchandise or products to a third person, followed by the acceptance of the consignee or other person in possession with the assent of the said third person, and a case of an order

"* * * to pay the proceeds of a bill of exchange, or note, *when collected*, to a third party, followed by the acceptance of the attorney, or other agent in possession of the holder, with assent of such party."

And held that in the former case

"* * * the title to the proceeds passes by virtue of the order and its acceptance by the consignee, with the assent of the party for whose benefit it was intended, and the merchandise is no longer liable to attachment at the suit of creditors of the owner or consignor, although the goods remain unsold at the time of the attachment. In the latter case, it has been held, that the title to the proceeds of the note, or bill of exchange, does not pass by virtue

of the order and its acceptance by the attorney, or other agent, * * * And as to the case of an order for the proceeds of notes when collected, see Bank of Alabama vs. Krafts, et al., 18 La. 565, and also the case of Wilson vs. Lizardi, 15 La. 255."

In cases of third opposition, the claimant cannot prevail unless he either owns or has a privilege on the property seized.

John Boubede vs. John O. Aymes, Executors of McNeil, third opponents, 29 La. Ann. 274.

Livaudais vs. Livaudais, 3 La. Ann. 454.
Hickman vs. Thompson, 26 La. Ann. 260.
Code of Practice, 397, 401.

Under third opponent's allegations it does not own the money in the hands of the attorneys.

The judgment appealed from is affirmed with costs.